UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:18-cv-00120-FDW

| | |
|---|---|
| JOHN ARTHUR STROUD, | ) |
| Petitioner, | ) |
| vs. | ) ORDER |
| ERIK A. HOOKS, | ) |
| Respondents. | ) |

**THIS MATTER** is before the Court upon Petitioner John Arthur Stroud's pro se Petition for Writ of Habeas Corpus, pursuant to 28 U.S.C. § 2254 (Doc. No. 1) and Respondent's Motion for Summary Judgment (Doc. No. 9).[1]

## I. BACKGROUND

Petitioner is a prisoner of the State of North Carolina, who, on April 16, 2015, was convicted by a Mecklenburg County Superior Court jury of felonious breaking or entering, larceny after breaking or entering, felonious possession of stolen goods, and non-felonious possession of stolen goods. State v. Stroud, 799 S.E.2d 279, 2017 WL 1629379, at *2 (N.C. Ct. App.) (unpublished table decision), appeal dismissed, review denied, 803 S.E.2d 160 (N.C. 2017). Stroud pleaded guilty to attaining the status of a habitual felon. Id. The trial court arrested judgment on the felonious possession of stolen goods charge, consolidated the other felony convictions, and sentenced Stroud as a habitual felon to a term of 115 to 120 months in

---

[1] In lieu of paying the $5.00 filing fee, Petitioner filed an application to proceed in the district court without prepaying fees or costs, which was docketed in error as an "AFFIDAVIT - 1983 Application IFP," rather than a motion to proceed in forma pauperis. (Doc. No. 4.) Consequently, the Court has not determined whether Petitioner may proceed in forma pauperis or must pay the filing fee. Based upon the application (Doc. No. 4) and Petitioner's trust account statement (Doc. No. 5), the Court shall grant Petitioner indigent status; he is not required to pay the filing fee.

1

prison.  Id.  The court sentenced Stroud to a consecutive term of 120 days on the non-felonious possession of stolen goods charge.  Id.

Stroud appealed.  The North Carolina Court of Appeals issued an unpublished opinion on May 2, 2017, finding no prejudicial error had occurred at trial.  Stroud, 799 S.E.2d 279, 2017 WL 1629379, at *4.  Thereafter, Stroud filed a notice of appeal and a petition for discretionary review in the North Carolina Supreme Court.  State v. Stroud, 803 S.E.2d 160 (2017) (Mem). On August 17, 2017, the State Supreme Court entered an Order dismissing the notice of appeal and denying the petition for discretionary review.  Id.

Stroud filed the instant federal habeas Petition on March 7, 2018.  (§ 2254 Pet. 21, Doc. No. 1.)  Stroud claims he was deprived of his right to meaningful appellate review, the right to the effective assistance of appellate counsel, due process, and equal protection because his trial transcript is deficient and incomplete (Ground One).  (§ 2254 Pet. 5.)  Stroud also claims the trial court erred in instructing the jury on flight (Ground Two).  (§ 2254 Pet. 6-8.)  Stroud's remaining grounds for relief (Three and Four) merely repeat the allegations and claims made in Grounds One and Two.  (§ 2254 Pet. 8-9. 17.)

Respondent has filed a Motion for Summary Judgment (Doc. No. 9), and Stroud has filed three letters addressed to Respondent, which the Court construes collectively as a response to the Motion for Summary Judgment (Doc. Nos. 11-13).  The response raises claims that are not included in the § 2254 Petition – ineffective assistance of trial counsel, lack of subject matter jurisdiction, and prosecutorial misconduct.  (Doc. No. 11.)  The Court shall not consider any of these new claims.  The Rules Governing Section 2254 Cases in the United States District Courts requires that all grounds for relief be raised in the habeas petition.  See Rule 2, 28 U.S.C.A. foll. § 2254.  While a petitioner may move to amend his habeas petition to add new claims, see Fed.

R. Civ. P. 15, Stroud has not done so.

## II.	STANDARDS OF REVIEW

Summary judgment is appropriate in those cases where there is no genuine dispute as to any material fact, and it appears that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c)(2); United States v. Lee, 943 F.2d 366, 368 (4th Cir. 1991). Any permissible inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587–88 (1986). Where, however, the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248–49 (1986).

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), habeas relief may be granted to a state prisoner only if the state court's last adjudication of a claim on the merits "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(2). To obtain relief under § 2254(d)(1), a petitioner "is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" Woods v. Donald, 135 S. Ct. 1372, 1376 (2015) (per curiam) (quoting Harrington v. Richter, 562 U.S. 86, 103 (2011)).

## III.	DISCUSSION

**A. Incomplete Trial Transcript**

Stroud claims he was denied his right to "effective" appellate review, effective assistance of appellate counsel, due process, and equal protection because his trial transcript is deficient and incomplete. (§ 2254 Pet. 5, 8, 17.) Stroud raised the substance of his due process claim[2] on direct appeal, and the North Carolina Court of Appeals denied it on the merits. Stroud, 799 S.E.2d 279, 2017 WL 1629379, at *2-*3.

The North Carolina Court of Appeals summarized the evidence in this case as follows:

On 31 May 2013, Joanna Petrie was returning to her family's home in Charlotte when she saw an unfamiliar man exit her garage, get into a white Ford Escape, and drive away. Joanna took note of the car's license plate number and told her mother, Julia Petrie, what she had seen. Joanna and Julia quickly discovered that two sets of golf clubs and two golf bags were missing from the garage. The Petries contacted the police.

The police determined that the vehicle Joanna had seen was registered to Kyana Renee Stele. When the police contacted Stele, she informed them that her mother and her mother's boyfriend, Defendant John Arthur Stroud, were the primary users of the car. Stele further informed the police that Stroud would be picking her mother up from a doctor's appointment later that afternoon.

The police were waiting for Stroud at the doctor's office when he arrived to pick up Stele's mother. Stroud arrived in Stele's white Ford Escape with the license plate matching the one Petrie observed in her driveway. There were golf clubs and bags in the back seat. The police arrested Stroud at the scene.

Later that day, Julia Petrie's husband, Christopher Petrie, identified one set of golf clubs and one golf bag recovered from Stroud as ones stolen from the Petrie's garage. But half of Christopher's clubs were still missing, and he informed the police that the other golf equipment recovered from the car—a green golf bag and another set of clubs—were not his.

The police soon identified a recently opened case where another homeowner had reported that golf clubs and a green golf bag had been stolen from his open garage. The police contacted that victim, who identified the other bag and clubs as those taken from his garage.

Stroud, however, maintained that the golf equipment found in the car belonged to him. He claimed that the owner of a pawn shop where he was formerly employed

---

[2] The right to "effective appellate review" and the right to "due process" are redundant in this context. See, e.g., Bush v. Sec'y, Florida Dep't of Corr., 888 F.3d 1188, 1197 (11th Cir. 2018) ("[A] trial transcript functions to ensure procedural due process on direct appeal.")

4

gave him the equipment as a gift. He also claimed that he was at home, doing floor repairs, when Joanna Petrie witnessed someone leaving her family's garage and that, during the time of the theft, Stroud had loaned Stele's white Ford Escape to a friend.

. . . The State tried Stroud on 13 April 2015.

At the charge conference, the State requested an instruction on flight. Stroud objected. The trial court overruled the objection and instructed the jury on flight.

. . .

Stroud's appellate counsel received a copy of Stroud's trial transcript on 14 March 2016. The court reporter who was present during the trial left the position during the preparation of the transcript, and other court reporters were brought in to complete the work. David E. Jester, Court Reporting Manager for the North Carolina Administrative Office of the Courts, sent a note to Stroud's counsel referencing the quality of the transcript:

[T]he transcript is going to end at the conclusion of the jury charge. You're also going to see quite a number of notations of the recording malfunctioning with clear "holes" in the transcript each time. In short, this is probably the worst transcript I've ever had a hand in producing, and I'm very upset I can't do any more to make it better.

Mr. Jester also sent a second note to both the attorney handling the appeal for the State and to Stroud's appellate counsel, which read as follows:

You'll note the records left by [the transcriptionist] were less than hoped and left many things missing from the transcript. As I told [Stroud's appellate counsel] earlier, it is upsetting to me that I and the other reporters that have worked on this case were not left in a position to produce a transcript any better than this.

Stroud, 799 S.E.2d 279, 2017 WL 1629379, at *1-*2. Appellate counsel identified three deficiencies with the transcript.[3] First, there are roughly 1054 "inaudible" notations where a word or phrase is missing from the transcript. (Def's Appellate Br. 11, Resp't's Ex. 4, Doc. No.

---

[3] The "transcript" includes three volumes of pre-trial motions hearings (Resp's Ex. 12, Doc. No. 10-13 at ECF pgs. 2-48), one trial transcript dealing with preliminary matters (id. at ECF pgs. 49-102), and one trial transcript covering the remainder of the trial through the jury charge (id. at ECF pgs. 103-272). Where the Court provides a pinpoint citation it is to the last transcript (Doc. No. 10-13 at ECF pgs. 103-272), and in those cases the Court uses the page numbers assigned by the court reporter, rather than the page numbers generated by the court electronic filing system ("ECF").

5

10-5.)  Next, "the recording appeared to malfunction" appears approximately 42 times in the transcript, followed by gaps of varying lengths.  (Id. at 11-13.)  Finally, the transcript ends with the charge to the jury, so jury deliberations, return of the verdicts, Petitioner's habitual felon plea hearing, and sentencing were not transcribed, if they were recorded at all.  (Id. at 13-14.) Appellate counsel asserted the incomplete transcript denied Stroud the right to effective appellate review, effective assistance of counsel, due process, and equal protection.  (Id. at 14.)

The U.S. Supreme Court has never held that a criminal defendant has a constitutional right to an appellate transcript.  See, e.g., Hardy v. United States, 375 U.S. 277, 282 (1964); see also Lafler v. Cooper, 566 U.S. 156, 168  (2012) ("[T]he Constitution does not require States to provide a system of appellate review at all."); Abney v. United States, 431 U.S. 651, 656 (1977) ("[I]t is well settled that there is no constitutional right to an appeal."); Griffin v. Illinois, 351 U.S. 12, 18 (1956) ("[A] state is not required by the Federal Constitution to provide appellate courts or a right to appellate review at all.").  Consequently, the North Carolina Court of Appeals' rejection of Stroud's due process claim did not result in a decision that was contrary to "clearly established Federal law, as determined by the Supreme Court of the United States."  § 2254(d)(1).

Nonetheless, "if a State has created appellate courts as 'an integral part of the . . . system for finally adjudicating the guilt or innocence of a defendant,' the procedures used in deciding appeals must comport with the demands of the Due Process and Equal Protection Clauses of the Constitution."  Evitts v. Lucey, 469 U.S. 387, 393 (1985) (alteration in original) (internal citation omitted) (quoting Griffin, 351 U.S. at 18).  Accordingly, an indigent criminal defendant must be provided "a 'record of sufficient completeness' to permit proper consideration of [his] claims" brought on appeal.  Mayer v. City of Chicago, 404 U.S. 189, 194 (1971) (alteration in original)

6

(quoting Draper v. Washington, 372 U.S. 487, 499 (1963)). "A 'record of sufficient completeness' does not translate automatically into a complete verbatim transcript," however. Mayer, 404 U.S. at 194. "[O]nce a State offers to criminal defendants the opportunity to appeal their cases, it must provide a trial transcript to an indigent defendant *if* the transcript is necessary to a decision on the merits of the appeal." Ake v. Oklahoma, 470 U.S. 68, 76 (1985) (emphasis added) (citing Griffin, 351 U.S. 12). Because the right to a "record of sufficient completeness" is a procedural due process right, see, Bush, 888 F.3d at 1197, a showing of prejudice is required, see, e.g., Keough v. Tate Cty. Bd. of Educ., 748 F.2d 1077, 1083 (5th Cir. 1984). See also Higginbotham v. Louisiana, 817 F.3d 217, 222 (5th Cir. 2016) ("[C]laims based on incomplete transcripts must show that 'the absence of such a transcript prejudiced [the defendant's] appeal.'" (alteration in original) (quoting Mullen v. Blackburn, 808 F.2d 1143, 1146 (5th Cir.1987))); United States v. Vazquez Guadalupe, 407 F.3d 492, 498 (1st Cir. 2005) ("[T]o obtain reversal and a new trial, the defendant must demonstrate specific prejudice to his ability to perfect an appeal.") (citation omitted)); United States v. Huggins, 191 F.3d 532, 536 (4th Cir. 1999) ("[W]hether an omission from a transcript warrants a new trial depends on whether the appellant has demonstrated that the omission specifically prejudices his appeal[.]") (citation and internal quotation omitted)).

In rejecting Stroud's due process claim, the North Carolina Court of Appeals relied upon prior holdings that "an incomplete or deficient transcript alone is not enough to require a new trial."[4] Stroud, 799 S.E.2d 279, 2017 WL 1629379, at *3 (citing State v. Hobbs, 660 S.E.2d 168,

---

[4] Under North Carolina law, in non-capital cases the court reporter must make a complete record of all proceedings except jury voir dire, opening and closing arguments of counsel, and arguments of counsel on questions of law. N.C. Gen. Stat. § 15A–1241(a)(1)–(3) (2009). These portions of the trial proceedings will be recorded only upon motion of a party or the judge. Id. at § 15A–1241(b); see also State v. Blakeney, 531 S.E.2d 799 (N.C. 2000) (no right to recordation of bench conference even in capital case where counsel made no request).

186 (N.C. Ct. App. 2008); State v. Hammonds, 541 S.E.2d 166, 177 (N.C. Ct. App. 2000), aff'd per curiam, 554 S.E.2d 645 (N.C. 2001). Instead, the court explained, the defendant must show prejudice as a result of the deficient transcript. Id. (citing Hobbs, 660 S.E.2d at 170). To satisfy the prejudice requirement, the defendant may not "rely on mere speculation or categorical assertions[.]" Id. (citing State v. Owens, 586 S.E.2d 519, 523 (N.C. Ct. App. 2003) ("[T]he use of general allegations of prejudice is insufficient to show reversible error resulting from the loss of specific portions of testimony caused by gaps in recording.")). "In other words, the defendant must specify how he has been prejudiced by the portions of the transcript that are missing or labeled 'inaudible.'" Id. (citing State v. Boggess, 600 S.E.2d 453, 459 (N.C. 2004); Hammonds, 541 S.E.2d at 177). Applying these principles to Stroud's claim, the court held he had failed to demonstrate prejudice stemming from deficiencies in the transcript. Id.

Although not a model of clarity, Stroud's prejudice argument on appeal appears to have been along these lines: because of the deficiencies in the transcript, appellate counsel was unable to assign and argue error, thereby depriving Stroud of the effective assistance of appellate counsel and effective appellate review. (Def's Appellate Br. 12, 13, 18-19.) Appellate counsel listed the following as "unknown" because of the deficiencies in the transcript:

> It is unknown what evidentiary rulings were made by the trial court. It is unknown whether the evidence was sufficient to support the convictions. It is unknown what the parties requested and how the trial court ruled during the charge conference. It is unknown whether lesser-included instructions that were not given might have been supported by the evidence. It is unknown what rulings were sought and made on the questions submitted by the jury. It is unknown if the jury was polled, and what transpired at that point. It is unknown whether the acceptance of Mr. Stroud's plea to attaining the status of habitual felon was proper. It is unknown whether Mr. Stroud submitted mitigating factors at sentencing that the trial court should have considered. It is unknown whether the sentence was supported by the evidence at the sentencing hearing.

(Id. at 15.)

The North Carolina Court of Appeals, however, found that Stroud had not identified any specific legal argument that he was unable to advance on appeal because of the deficiencies in his trial transcript. Stroud, 799 S.E.2d 279, 2017 WL 1629379, at *3. While acknowledging that "[v]irtually every exchange that occurs throughout the proceeding includes at least one 'inaudible' notation," id., the court found that those inaudible portions of the transcript "have 'surrounding material that give context to the missing parts,'" making it possible " 'in most instances . . . to reconstruct the substance of what was said, even if the precise words are lost.'" Id. (quoting Hammonds, 541 S.E.2d at 177). Additionally, the court found that with respect to portions of the trial that do not appear to have been recorded at all – specifically, Petitioner's plea to being a habitual felon and sentencing – Petitioner failed to satisfy his burden to show prejudice by pointing to anything specific in the record (as opposed to the transcript) to support his argument that he was prejudiced. Id.

This Court has reviewed the transcript and cannot find that the state court's ruling "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Richter, 562 U.S. at 103. In contrast to the gaps created by recording equipment malfunctions, the "inaudible" notations appear to stem from acoustics problems in the courtroom. (Trial. Tr. 117, 163, 165, 174-175, 180, 183, 184, Resp's Ex. 12, Doc. No. 10-13; Juror note, R. 102, Resp's Ex. 3, Doc. No. 10-4.) In most instances where there is an "inaudible" notation, this Court found it is possible to reconstruct the substance of what was said from the surrounding material, testimony of other witnesses, and the Record on Appeal[5] (Resp's Ex. 3, Doc. No. 10-4).

---

[5] For example, the Record on Appeal contains State and Defense exhibits, including photographs of the items found in Petitioner's possession that State witnesses identified as belonging to them, and statements made to police by two testifying witnesses. (R. at 52-86, Resp't's Ex. 3, Doc. No. 10-4.)

9

The same is true for many of the gaps in the transcript created by recording equipment malfunctions. Some malfunctions were so brief nothing, or almost nothing, was missed. For example, a malfunction occurred immediately after defense counsel objected to the investigating officer, Detective Whitesell, testifying about a statement Petitioner made when arrested. After the malfunction notation, the transcript resumes with the court reporter asking Detective Whitesell to repeat the statement that had drawn the objection; Whitesell repeated the statement, and the trial court overruled defense counsel's objection. (Trial Tr. 128.) In another example, a gap in the transcript follows an objection by defense counsel to Detective Whitesell testifying about how Jeffery Miller reacted when emailed a photograph of a golf bag and clubs found in Petitioner's car. The trial court sustained the objection, began to address the jury ("Members of the jury . . ."), and the malfunction occurred. (Trial Tr. 130.) The transcript resumes with Whitesell testifying about Miller's reactions and statements when the two met. (Trial Tr. 131.) Miller himself subsequently testified. (Trial Tr. 141-152.) From these contextual clues, it may be presumed that during the gap in the transcript, the trial court issued an instruction to the jury limiting its consideration of Detective Whitesell's testimony about Miller's actions, reactions, and statements.

As for appellate counsel's list of "unknowns," the transcript includes evidence that Stroud's car was used during the course of the breaking and entering of the Petrie's garage, that Stroud was, at that time, the only one who drove the car, that a golf bag, golf clubs, and other items belonging to Christopher Petrie were in Stroud's car when he was arrested, that the value of the items stolen from Petrie exceeded $1,000, that a golf bag, golf clubs, and other items belonging to Jeffery Miller were in Stroud's car when he was arrested, and that the value of the items stolen from Miller did not exceed $1,000. Photographs of the items recovered from

Petitioner's car, and identified by Petrie and Miller as belonging to one or the other, were admitted into evidence, published to the jury, and included in the Record on Appeal. Stroud's indictments also were included in the Record on Appeal. (R. at 16-19.) If the evidence in the transcript was insufficient to prove one or more elements of the charged offenses, nothing precluded Stroud from arguing that on appeal. Accordingly, he has not shown it was unreasonable for the state court to reject his conclusory assertion that "it is unknown whether the evidence was sufficient to support the convictions."

Nor has he shown it was unreasonable for the state court to reject his assertions that it is "unknown what the parties requested and how the trial court ruled during the charge conference . . . [and] whether lesser-included instructions that were not given might have been supported by the evidence." No recording malfunctions are noted in either the charge conference or during the trial court's instructions to the jury. While there are numerous instances of the dialogue being inaudible during both, this Court found only one instance where it is unclear from the surrounding dialogue what a party requested during the charge conference:

> [DEFENSE COUNSEL]: And Your Honor, I would (inaudible) ask the Court to instruct (inaudible) ask the Court's permission (inaudible).
>
> THE COURT: (Inaudible).
>
> [DEFENSE COUNSEL]: Thank you. The other (inaudible) concurs with the State's— I mean concurs with the Court's instructions.

(Trial Tr. 199.) Whatever defense counsel requested, it appears the court granted the request. The court's charge to the jury is in the transcript, and Petitioner could have challenged any of those instructions on direct appeal. Petitioner likewise could have identified other instructions he believes should have been given but were not.

As for lesser-included offense instructions, the Court again notes the indictments are in

11

the Record on Appeal. There are a finite number of lesser-included offenses for each of the crimes charged. Nothing precluded Stroud from arguing on appeal that the evidence in the transcript supported instruction on one or more unspecified lesser-included offense.

Turning to the habitual felon plea hearing and sentencing, the Record on Appeal includes Petitioner's habitual felon indictment, transcript of plea,[6] restitution worksheet, notice and order, prior record level worksheet, certificate as to credit upon sentence, and judgment and commitment forms. (R. at 20-21, 128-141.) As the appellate court observed, Petitioner did not need a transcript to challenge his status as an habitual felon, Stroud, 799 S.E.2d 279, 2017 WL 1629379, at *3; he needed evidence that one or more of the convictions listed in the habitual felon indictment was not valid or did not count under the habitual felon statute. The transcript of plea, which indicates Petitioner pled guilty knowingly and voluntarily, bears his signature, the signatures of the deputy clerk of court, the prosecutor, Stroud's defense attorney, and the judge, and a Mecklenburg County Clerk of Superior Court file stamp. (R. at 128-130.) Stroud did not allege the document is fraudulent in any way. Nor did Petitioner identify mitigating factors he could have presented that would have been relevant to his sentence. Id. Given that Stroud was sentenced in the presumptive range, he must identify some error in his prior record level work sheet (which he does not) or some mitigating circumstance(s) that would have justified a sentence in the mitigating range.

There are some gaps in the transcript that cannot be reconstructed with any confidence, however, and there is no transcript for any of the jury's deliberations or return of the verdicts. Thus, as appellate counsel argued, "[i]t is unknown what rulings were sought and made on the

---

[6] The habitual felon transcript of plea (R. at 128-130) is not a transcription of what was said during the plea hearing; it is the title of the document containing Petitioner's answers to a series of questions posed to him by the trial court during the plea hearing.

questions submitted by the jury [during deliberations] . . . [and] if the jury was polled, and what transpired at that point." Nevertheless, as the state appellate court found, these are not claims of specific error. In other words, Stroud does not allege the trial court erred in how it handled the jury's questions or that the jury was not polled after returning its verdicts. He claims that the deficient transcript itself did not allow him to determine whether such errors occurred.

Stroud's allegations rely on the possibility of prejudice. As stated previously, "the absence of a perfect transcript does not violate due process absent a showing of specific prejudice." White v. State of Fla., Dep't of Corr., 939 F.2d 912, 914 (11th Cir. 1991) (citing Bransford v. Brown, 806 F.2d 83, 86 (6th Cir. 1986); Mitchell v. Wyrick, 698 F.2d 940, 941-42 (8th Cir. 1983)). Moreover, a state is not "required to furnish complete transcripts so that the defendants . . . may conduct 'fishing expeditions' to seek out possible errors at trial." Jackson v. Estelle, 672 F.2d 505, 506 (5th Cir. 1982). In sum, because Petitioner did not allege specific prejudice on direct appeal, he has not demonstrated that the state court's ruling "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Richter, 562 U.S. at 103.

To the extent Petitioner claims the incomplete transcript denied him equal protection and the ability to pursue the 47 proposed issues for appeal listed in the record on appeal, those claims are procedurally defaulted. A federal habeas court will not review a claim that is procedurally defaulted absent a showing of cause and prejudice to excuse the default, or that a fundamental miscarriage of justice will occur if the habeas court does not review the claim. See Wright v. Angelone, 151 F.3d 151, 160 (4th Cir. 1998).

One way in which procedural default occurs is when "a habeas petitioner fails to exhaust available state remedies and the court to which the petitioner would be required to present his

claims in order to meet the exhaustion requirement would now find the claims procedurally barred." Breard v. Pruett, 134 F.3d 615, 619 (4th Cir. 1998) (internal quotation marks omitted); 28 U.S.C. § 2254(b)(1)(A).[7] In order to exhaust available state remedies, a prisoner must provide the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented through a habeas petition in federal court. O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999). "A habeas petitioner satisfies the exhaustion requirement by 'fairly present[ing] his claim in each appropriate state court . . . thereby alerting that court to the federal nature of the claim.'" Robinson v. Thomas, 855 F.3d 278, 283 (4th Cir. 2017) (quoting Baldwin v. Reese, 541 U.S. 27, 29 (2004)). "Fair presentation" requires a petitioner to show "that 'both the operative facts and the controlling legal principles [were] presented to the state court.'" Jones v. Sussex I State Prison, 591 F.3d 707, 713 (4th Cir. 2010) (quoting Baker v. Corcoran, 220 F.3d 276, 289 (4th Cir. 2000)). Furthermore, the prisoner must present the federal claim to all appropriate state courts, including the highest appellate court established to review such a claim. See O'Sullivan, 526 U.S. at 845.

Although Stroud alleged on appeal that his right to equal protection was violated, he did so in a conclusory fashion – e.g. "[t]he State's failure to provide an adequate trial transcript violates [his] right[ ] to . . . equal protection of the law." (Def's Appellate Br. 7-8, 11, 14.) Neither his appellate brief in the North Carolina Court of Appeals (id.), nor his petition for discretionary review in the North Carolina Supreme Court (Resp't's Ex. 9, Doc. No. 10-10), identifies the "operative facts" or cites the "controlling legal principles" that would support an

---

[7] 28 U.S.C. § 2254(b)(1) provides that "[a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that—(A) the applicant has exhausted the remedies available in the courts of the State; or (B)(i) there is an absence of available State corrective process; or (ii) circumstances exist that render such process ineffective to protect the rights of the applicant." § 2254(b)(1)(A) & (B).

14

equal protection claim. Therefore, Stroud failed to fairly present an equal protection claim in the state courts, and it is procedurally defaulted here. See Jones, 591 F.3d at 713. Stroud does not assert cause and prejudice to excuse the default, or that a fundamental miscarriage of justice will occur if the Court refuses to review his claim on the merits.

In fact, the Court cannot review Stroud's equal protection claim on the merits, because he again fails to identify the "operative facts" or cite the "controlling legal principles" that would support such a claim. (§ 2254 Pet. 5.) In other words, the claim raised here is just as conclusory as it was on direct appeal.

Petitioner's claim that the incomplete transcript denied him the ability to pursue the 47 proposed issues for appeal listed in the record on appeal (R. at 180-185) was not raised at all on direct appeal (Doc. No. 10-5) or in his petition for discretionary review in the North Carolina Supreme Court (Doc. No. 10-10).[8] Therefore, Stroud failed to fairly present this claim in the state courts, and it is procedurally defaulted here. See id.

Although Respondent raises procedural default as a defense to this claim (Summ. J. Support. Br. 8, Doc. No. 10), Stroud does not assert cause and prejudice to excuse the default, or that a fundamental miscarriage of justice will occur if the Court refuses to review his claim on the merits. The Court, in fact, cannot review Stroud's claim, because he fails to identify the operative facts or the legal bases that would support the issues appellate counsel identified for appeal but did not pursue.

To recap, Stroud's claim that he was denied his due process right to a meaningful appeal because his trial transcript is deficient and incomplete is denied under § 2254(d)(1). Stroud's equal protection claim and his claim that the incomplete transcript denied him the ability to

---

[8] The Court notes that appellate counsel did, in fact, pursue three of the proposed issues on direct appeal in the North Carolina Court of Appeals. (Proposed Issues 1, 5, 35, R. at 180, 184.)

15

pursue the 47 proposed issues for appeal listed in the record on appeal are dismissed as procedurally defaulted.

### B. Flight Instruction

During the charge conference, the State requested an instruction on flight, and over defense counsel's objection, the trial court instructed the jury on flight. (Trial Tr. 198-199, 211.) Stroud claims the trial court erred by giving that instruction. (§ 2254 Pet. 6.)

Respondent contends this claim is procedurally defaulted for two reasons. First, Stroud raised the substance of this claim in the North Carolina Court of Appeals solely on state law grounds. (Summ. J. Support. Br. 12-13.) Second, Stroud failed to raise this claim in his petition for discretionary review in the North Carolina Supreme Court. (Id. at 14.) The Court need not address the first ground, as it is clear this claim is procedurally defaulted on the second ground raised by Respondent.

As discussed in the previous section of this Order, the AEDPA provides that a petition for writ of habeas corpus shall not be granted unless the petitioner has exhausted the remedies available in the state courts. See 28 U.S.C. § 2254(b)(1)(A). As also explained, in order to exhaust available state remedies, a prisoner must provide all appropriate state courts, including the highest appellate court established to review such claims, a full and fair opportunity to resolve federal constitutional claims before those claims are presented through a habeas petition in federal court. See O'Sullivan, 526 U.S. at 845.

In North Carolina, a petitioner may satisfy the exhaustion requirement of § 2254 by raising the claim in a direct appeal to the North Carolina Court of Appeals and in a subsequent petition for discretionary review in the North Carolina Supreme Court, or by raising the claim in a motion for appropriate relief before the trial court and in a subsequent petition for a writ of

16

certiorari in the North Carolina Court of Appeals.  See N.C. Gen. Stat. § 7A–31; N.C. Gen. Stat. § 15A–1422.  Here, Stroud challenged the flight instruction on direct appeal in the North Carolina Court of Appeals, but he did not challenge it in his petition for discretionary review in the North Carolina Supreme Court (Doc. No. 10-10).  Because he did not provide the highest appellate court a full and fair opportunity to resolve his challenge to the flight instruction, his claim is procedurally defaulted on federal habeas review.  See O'Sullivan, 526 U.S. at 845.

Stroud does not assert cause and prejudice to excuse the default, or that a fundamental miscarriage of justice will occur if the Court refuses to review his claim on the merits.  Accordingly, this claim shall be dismissed.

**IT IS, THEREFORE, ORDERED** that:

1) Petitioner is granted in forma pauperis status;

2) Respondent's Motion for Summary Judgment (Doc. No. 9) is **GRANTED**;

3) The Petition for Writ of Habeas Corpus, 28 U.S.C. § 2254, (Doc. No. 1) is **DISMISSED** with prejudice and **DENIED**; and

4) Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases, the Court declines to issue a certificate of appealability as Petitioner has not made a substantial showing of a denial of a constitutional right.  28 U.S.C. § 2253(c)(2); Miller-El v. Cockrell, 537 U.S. 322, 336-38 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong); Slack v. McDaniel, 529 U.S. 474, 484 (2000) (holding that when relief is denied on procedural grounds, a petitioner must establish both that the correctness of the dispositive procedural ruling is debatable, and that the petition states a debatably valid claim of the denial of a constitutional

right).

**SO ORDERED.**

Signed: February 26, 2019

Frank D. Whitney
Chief United States District Judge